Isom LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 45402.

Court of Criminal Appeals of Texas.

Dec. 6, 1972.

Rehearing Denied Jan. 24, 1973.

Melvyn Carson Bruder, Dallas (Court Appointed on Appeal), for appellant.

Henry Wade, Dist. Atty., Catherine T. Hill, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for engaging in the business of bookmaking. After the jury had returned a verdict of guilty, punishment was assessed by the court at one year in jail and a fine of One Hundred Dollars.

At the outset, appellant contends that Section 2 of Article 652a, Vernon's Ann. P.C., is in conflict with Article 1, Section 19 of the Texas Constitution, Vernon's Ann.St., and Article 21.24, Vernon's Ann. C.C.P.

The pertinent portion of Article 652a, Section 1, provides that any person who takes or accepts or places for another a bet or wager of money or anything of value on a horse race shall be guilty of bookmaking, and shall be punished, upon conviction, by confinement in the State Penitentiary for any term of years not less than one (1) nor more than five (5) or by confinement in the county jail for not less than ten (10) days nor more than one (1) year and by a fine of not less than One Hundred ($100.00) Dollars nor more than One Thousand ($1,000.00) Dollars.

Article 652a, Section 2, V.A.P.C., provides that any person who shall within a period of one (1) year preceding the filing of the indictment commit as many as three (3) acts which are prohibited under Section 1 of this Act shall be guilty of engaging in the business of bookmaking and upon conviction shall be punished as provided in Section 1.

Appellant urges that Section 2 authorizes the State to allege and prove the commission of more than one offense of

the exact type set out in Section 1, thereby violating Article 21.24, V.A.C.C.P.,[1] and Article 1, Section 19 of the Texas Constitution prohibiting the Legislature from depriving any citizen of his liberty or property except by due course of law.

The indictment in the instant case alleges that appellant did take and accept three separate bets and wagers of money on horse races, the indictment reciting the amounts and the dates of the bets.

The thrust of appellant's argument is that Section 2 authorizes the State to allege and prove the commission of more than one offense of the exact same type. Appellant concedes that if Section 2 created a separate offense with a separate penalty another situation would be presented.

This Court, in Sassano v. State, 163 Tex.Cr.R. 345, 291 S.W.2d 323, answered this contention adversely to appellant when it held:

"The offense of bookmaking and that of engaging in the business of bookmaking, even though they are punishable alike, *are separate and distinct offenses*, being founded upon separate fact situations." (emphasis added)

Appellant next contends that the evidence shows as a matter of law that he was entrapped.

Officer Hensley, of the Dallas Police Department, testified that while making an investigation of bookmaking in Dallas in the capacity of an undercover agent, he had an opportunity to see appellant fifty or sixty times during a three and a half month period of time from March 15, 1968 through June, 1968. Hensley further testified that he placed bets with appellant on May 30, May 31 and June 5, 1968. Appellant testified that Hensley had told him "he wanted to get some bets on some horses," but that he had refused to place bets

for Hensley. After both sides had closed, the appellant moved to reopen in order that he might testify further. Upon returning to the stand, appellant was asked if he had placed bets in the amounts and on the dates in question and he responded, "Something like that on three different times." Appellant went on to testify that he did not take any money from Hensley, but that the money was given him by a man named "Tommy," who was manager of the "Red Jacket." When appellant was asked if Hensley told him how to book the money, he (appellant) responded: "Norman Hensley didn't tell me anything. He only tried to get me to take money for a bet. I took the money from Tommy." The nearest appellant came to connecting Hensley with the bets was during re-direct examination of appellant when the following occurred:

"Q. So then you did take some money on behalf of Norman Hensley through this other fellow, Tommy, is that correct?

"A. I guess so, but I didn't take no money myself."

The court charged the jury on the law of entrapment and the jury rejected this defense. Appellant urges that he was entrapped as a matter of law.

In Sutton v. State, 170 Tex.Cr.R. 617, 343 S.W.2d 452, this Court said:

"It is the general rule that where the criminal intent originates in the mind of an accused, the fact that the officers furnish the opportunity for or aid the accused in the commission of a crime constitutes no defense to such a prosecution. However, if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, such is entrapment and, in law, may constitute a defense."

---

1. The pertinent portion of Article 21.24, V.A.C.C.P., provides: "An indictment . . . . may contain as many counts charging the same offense as the attorney who prepares it, acting in good faith, may think necessary to insert, but may not charge more than one offense."

In Jones v. State, Tex.Cr.App., 427 S. W.2d 616, it was said:

"It appears to be well established that the factual issue of entrapment is a question for the jury, unless as a matter of law the accused has established beyond a reasonable doubt he was entrapped. See Accardi v. United States (5th Cir.) 257 F.2d 168; Washington v. United States (5th Cir.) 275 F.2d 687; Demos v. United States (5th Cir.) 205 F.2d 596; 17 Baylor Law Review 426, 430. See also Coronado v. United States (5th Cir.) 266 F.2d 719 ('. . . entrapment is a jury question unless evidence is so clear and convincing that the matter can be passed on by the court as a matter of law')."

To hold that appellant was entrapped as a matter of law in the instant case would have required the court to find beyond a reasonable doubt that the criminal design originated in the mind of the officer and that the officer induced appellant to commit a crime he would not otherwise have committed except for such inducement. The evidence does not justify such a finding. We reject appellant's contention that he was entrapped as a matter of law.

Appellant's next contention is that the court erred in overruling his motion for an instructed verdict on the ground that a conviction could not be sustained upon the uncorroborated testimony of an accomplice. An undercover agent is not an accomplice so long as he does not bring about the crime. Burns v. State, Tex.Cr.App., 473 S.W.2d 19; Gomez v. State, Tex.Cr.App., 461 S.W.2d 422; Ochoa v. State, Tex.Cr.App., 444 S.W.2d 763; Jones v. State, Tex.Cr.App., 427 S. W.2d 616. We have reviewed the facts germane to appellant's contention (recited under appellant's previous ground of error) in light of the foregoing authorities and conclude that the court did not err in overruling appellant's motion for instructed verdict.

Appellant contends that the court improperly limited his scope of voir dire examination of the jury panel.

Appellant urges that the court erred in preventing him from inquiring of the veniremen as to their political affiliation.

Appellant relies on cases where this Court held it was error to disallow accused's counsel to interrogate veniremen as to whether or not they were members of the Ku Klux Klan. Reich v. State, 94 Tex. Cr.R. 449, 251 S.W. 1072 (1923); Bensen v. State, 95 Tex.Cr.R. 311, 254 S.W. 793 (1923); Welk v. State, 96 Tex.Cr.R. 373, 257 S.W. 1098 (1924); Belcher v. State, 96 Tex.Cr.R. 382, 257 S.W. 1097 (1924). It was pointed out in the opinions in Reich v. State, supra, and Bensen v. State, supra, that the court's holding that it was error to refuse interrogation of veniremen regarding membership in the Ku Klux Klan was bottomed on the proposition that such an organization had interested itself and its membership in the conviction of persons charged with crime. The rationale of the Ku Klux Klan cases is not applicable to the instant case. We find that the court did not abuse its discretion in refusing to allow appellant's counsel to inquire of the political affiliations of members of the jury panel. See Grizzell v. State, 164 Tex.Cr.R. 362, 298 S.W.2d 816.

Lastly, appellant contends that the judgment entered is void. The judgment reflects that punishment was set by the court "by confinement in the County Jail of Dallas County, Texas for 1 year . . . . . ." The sentence provides for one year's confinement in jail and a fine of $100. Article 652a, V.A.P.C., provides for punishment of "not less than ten (10) days nor more than one (1) year and by a fine of not less than One Hundred ($100.00) Dollars nor more then One Thousand ($1,000.00) Dollars."

The transcription of the court reporter's notes concludes with "punishment was set by the Court, which hearing was not taken by the Court Reporter."

A docket sheet entry of September 23, 1969[2] reflects: "Punishment set by court at 1 year in county jail and $100 fine."

Article 44.24, V.A.C.C.P., provides that this court may reform and correct the judgment as the law and the nature of the case require. The docket sheet reflects that punishment was assessed by the court at confinement in jail for one year and by a fine of One Hundred Dollars. The sentence reflects the punishment shown on the docket sheet. The judgment is reformed to show that punishment was assessed by the court at confinement in the county jail of Dallas County, Texas, for one (1) year and by a fine of One Hundred ($100) Dollars.

The judgment as reformed is affirmed.

Opinion approved by the Court.

**2.** The same date the jury verdict was returned.